

IN THE UNITED STATES DISTRICT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>*Ex rel.* CYNTHIA SMITH, and )<br>MELANIE CHILDRESS )<br>)<br>          Plaintiff - Relator, )<br>)<br>vs. )<br>)<br>CAROLINA COMPREHENSIVE )<br>HEALTH NETWORK, PA, SMH )<br>ENTERTAINMENT, LLC, MICHAEL )<br>A. SMITH, BRIAN GASKILL, MEL )<br>A. VOULGAROPOULOS, MD, )<br>PENNY POPE, FNP, CLAUDIA )<br>SWOOPE, and ROBERT )<br>SCHOONHOVEN. )<br>          Defendants. | CIVIL ACTION NO. 16CV234<br><br>QUI TAM ACTION |

**FILED IN CAMERA AND UNDER SEAL**

**COMPLAINT PURSUANT TO 31 U.S.C. §3729-3732 OF THE FEDERAL FALSE CLAIMS ACT**

None of the allegations set forth in this Complaint are based on a public disclosure of allegations or transactions in a criminal, civil or administrative hearing, in a congressional, administrative or General Accounting Office report, hearing, audit or investigation, or from the news media. Relators are the original source of this information.

                                          MILLER LAW FIRM, PLLC

                                          By: _____
                                                 W. Stacy Miller, II
                                                 Attorney for Relators
                                                 NC State Bar #21198

1

IN THE UNITED STATES DISTRICT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| *Ex rel.* CYNTHIA SMITH, and ) | |
| MELANIE CHILDRESS ) | |
| ) | CIVIL ACTION NO. |
| Plaintiffs, ) | |
| ) | COMPLAINT AND DEMAND FOR JURY |
| v. ) | TRIAL |
| ) | |
| CAROLINA COMPREHENSIVE ) | FILED UNDER SEAL PURSUANT TO |
| HEALTH NETWORK, PA, SMH ) | 31 U.S.C. § 3730(b)(2) |
| ENTERTAINMENT, LLC, MICHAEL ) | |
| A. SMITH, BRIAN GASKILL, MEL ) | |
| A. VOULGAROPOULOS, MD, ) | |
| PENNY POPE, FNP, CLAUDIA ) | |
| SWOOPE and ROBERT ) | |
| SCHOONHOVEN. | |
| Defendants. | |

## PRELIMINARY STATEMENT

This lawsuit is based on the submission of false claims by Carolina Comprehensive Health Network, PA, a North Carolina professional corporation, organizing and doing business under the laws of that state. Carolina Comprehensive Health Network was comprised of nine clinics which all provided services in family medicine, immediate care, and pain management to patients whose medical services were paid by Medicare and Medicaid. The fraud described was perpetuated, at a minimum in the State of North Carolina over a period of at least one year and eight months.

2

Carolina Comprehensive Health Network, through its owner, Michael A. Smith, Chief Executive Officer, Brian Gaskill, Medical Doctor, Mel Voulgaropoulos, Family Nurse Practictioner, Penny Pope, District Manager, Claudia Swoope, and Director of the Statesville Laboratory, Robert Schoonhoven, conspired by presenting or causing to be presented, in making or causing to be made, or using false records or statements to get false or fraudulent claims paid or approved by Medicare and Medicaid. The Relators, Cynthia Smith and Melanie Childress, acting on behalf of and in the name of the United States of America, bring this civil action under the *qui tam* provisions of the False Claims Act and allege as follows:

## JURISDICTION AND VENUE

1. That this Court has jurisdiction over this Complaint pursuant to 28 U.S.C. §§1331 and 1345, and false claims jurisdiction under 31 U.S.C. §3732(a).

2. This is an action to recover damages and civil penalties brought by Cynthia Smith and Melanie Childress (hereafter "Relators"), individuals, on behalf of the United States of America, and on behalf of the State of North Carolina, against Carolina Comprehensive Health Network, arising from an unlawful scheme and conspiracy to defraud the United States of America and Medicare and Medicaid in particular, by submission by Carolina Comprehensive Health Network, of false and fraudulent Medicare and Medicaid claims for reimbursement to the United States Government in violation of the False Claims Act, as amended 31 U.S.C. §3729, *et seq.* ("False Claims Act"), and the North Carolina False Claims Act, N.C. Gen. Stat. §§ 1-605, *et seq.*

3. The False Claims Act provides that any person who knowingly submits, or causes the submission of, a false or fraudulent claim to the U.S. Government for payment or approval is

liable for a civil penalty of up to $10,000 for each such claim, plus three times the amount of the damages sustained by the Government.

4. The Act allows any person having information about a false or fraudulent claim against the Government to bring an action for himself and the Government, and to share in any recovery. The Act requires that the complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time) to allow the Government time to conduct its own investigation and to determine whether to join the suit.

5. This is an action for treble damages and penalties for each false claim and each false statement under the False Claims Act, 31 U.S.C. §3729, *et seq.*, and the North Carolina False Claims Act, N.C. Gen. Stat. §§ 1-605, *et seq.*

6. That all of the alleged acts arose in the Middle, Eastern, and Western Districts of North Carolina. Carolina Comprehensive Health Network is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business in Statesville, North Carolina, and offices throughout North Carolina in Cleveland, Leland, Statesville, Shelby, Charlotte, Carolina Beach, Huntersville, Mt. Airy, and Southport. Accordingly, venue in this district is proper pursuant to 31 U.S.C. §3732(a). **The Registered Agent of Carolina Comprehensive Health Network, PA, is Michael A. Smith. The address of the initial registered office of the corporation is 1503 East Broad Street, Statesville, NC 28625.**

## IN CAMERA REVIEW

7. That under the provisions of 31 U.S.C. §3730(b)(2), this Complaint is to be filed *in camera* and is to remain under seal for a period of at least sixty (60) days and shall not be served on the Defendant until the Court so orders. The Government may elect to intervene and proceed with the action within sixty (60) days after it receives both the Complaint and the

4

material evidence and information establishing this cause of action. The court, at its discretion may grant continuance of the Seal Order.

8. That the Relators, Cynthia Smith and Melanie Childress, are citizens of the United States of American and the State of North Carolina, and are suing in the name of and on behalf of the United States of America and the State of North Carolina. Relator Melanie Childress was hired by Carolina Comprehensive Health Network as a licensed practical nurse on February 1, 2014, and remained with the company until November 6, 2015. Relator Cynthia Smith was hired by Carolina Comprehensive Health Network as a Medical Assistant on August 9, 2014, and remained with the company until September of 2015. Both Relators have personal knowledge of the operations, procedures, protocols, and billing policies of Carolina Comprehensive Health Network.

9. Both Relators observed Carolina Comprehensive Health Network's practices as to filing of claims with Medicare and Medicaid and know that Carolina Comprehensive Health Network is responsible for making or causing to be made, or submitting or causing to be submitted, fraudulent claims to Medicare and Medicaid for medically unnecessary testing and services, up-coding of services, and coding for services never rendered.

10. That none of the allegations set forth in this Complaint are based on a public disclosure of allegations or transactions in a criminal, civil or administrative hearing, in a congressional, administrative or General Accounting Office report, hearing, audit, or investigation, or from the news media; the Relators are their original source.

11. That the Relators have direct and independent knowledge within the meaning of 31 U.S.C. §3730(e)(4)(B) of the information on which the allegations set forth in this Complaint

5

are based, and they have voluntarily, through their attorney, provided this information to the government by way of disclosure prior to filing this complaint.

12. That as required by 31 U.S.C. §3730(a)(2), Relator has provided to the Attorney General of the United States and to the United States Attorney for the Middle District, simultaneous with the filing of this Complaint, a statement of material evidence disclosing information related to the Complaint, the fraudulent billing and false claims submitted by Carolina Comprehensive Health Network.

13. That Carolina Comprehensive Health Network provides family medicine, immediate care, and pain management services to the public and receives a substantial amount of funds from Medicare and Medicaid reimbursements. The submission by Carolina Comprehensive Health Network to Medicare and Medicaid for payment or reimbursement involves a representation of certification that the Defendant will abide by and has abided by and that it will adhere to and has adhered to all of the statutes, rules, and regulations governing the Medicare and Medicaid programs. All of the actions attributed to Carolina Comprehensive Health Network in this Complaint were taken by physicians, nurse practitioners, and employees and/or agents of Carolina Comprehensive Health Network, acting within the scope of their employment and/or agency.

## APPLICABLE REGULATORY AND LEGAL BACKGROUND

14. That the United States Department of Health and Human Services (hereinafter "HHS") acting by and through the Centers for Medicare and Medicaid (hereinafter "CMS") is an agency of the United States of America responsible for administering the federal Medicare Programs, *see* 42 U.S.C. §1395, *et seq.*, under which healthcare facilities and providers may be

6

Case 1:16-cv-00234-WO-LPA   Document 1   Filed 03/25/16   Page 6 of 20

reimbursed with federal funds for services provided to eligible patients or Medicare beneficiaries.

15. That the Medicare Program which provides federal reimbursement for medically necessary services and supplies used by eligible persons or Medicare beneficiaries ("beneficiaries" or "patients") was established in 1965 by Title XVIII of the Social Security Act, 42 U.S.C. §1395, *et seq.* Medicare health reimbursement is governed by statute and regulations issued by HHS.

16. That the Medicaid program was similarly established in 1965 by Title XIX of the Social Security Act as a means-tested program providing health care to the indigent that is jointly funded by the state and federal governments and administered by the individual states with CMS oversight and the provision of certain federal matching funds.

17. That CMS is responsible for the administration of the Medicare Programs and contracts with private companies in each state known as "intermediaries" and "carriers" to administer Parts A and B of the Medicare Program, respectively, Medicaid being similarly managed.

18. That Medicare allows payments under Part B (supplementary medical insurance for the aged and disabled) to cover non-institutional services such as physician services and is customarily made on a reasonable charge basis. These Part B services provided by Carolina Comprehensive Health Network, specifically Level 4 Office visits, Medicare Annual Well Visits, nerve conduction studies, mass spectronomy tests, pulse oximeter readings, lab work, tobacco-use cessation counseling visits, and cortisone injections are at issue in this lawsuit.

19. That 42 U.S.C. §1320a-7b(a) prohibits anyone from knowingly and willfully making or causing to be made any false statement or representation of a material fact in any

7

application for any benefit or payment under a Federal Healthcare Program, including Medicare and Medicaid. In the case at hand, Carolina Comprehensive Health Network has violated this statute by committing the foregoing actions.

20. That as a condition of participation in the Medicare Program Carolina Comprehensive Health Network and all physicians employed by that entity completed and signed Medicare enrollment applications which contained the certification and representation by them that they individually accepted the responsibility for insuring (a) adherence to all Medicare laws and guidelines which dictate the proper operation of their businesses; (b) adherence to guidelines as outlined by the federal government; and (c) that there would be no prohibited referrals nor prohibited billings to Medicare.

## FACTUAL PARTICULARS OF FRAUDULENT SCHEME TO DEFRAUD AND PRESENT FALSE CLAIMS TO THE UNITED STATES GOVERNMENT

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, Relators plead with particularity the following conduct:

21. That Relators, Cynthia Smith and Melanie Childress, were hired by Carolina Comprehensive Health Network as a medical assistant and licensed practical nurse respectively. Both Relators were hired to work in the Mount Airy location, but Ms. Childress spent some time working in the Statesville location also.

22. During the Relators employment with Carolina Comprehensive Health Network both individuals became aware of fraudulent activity occurring within the Mount Airy practice related to medically unnecessary testing being performed, up-coding of services and visits, and coding for services never rendered.

8

23. That during their employment with Carolina Comprehensive Health Network, Relators became aware that the owner of Carolina Comprehensive Health Network, Michael A. Smith, was also owner of SMH Entertainment, LLC ("SMH"). SMH is a record label and music production company incorporated in North Carolina. That Michael A. Smith was working as an agent on behalf of SMH during the aforementioned fraudulent activity and that SMH did benefit from such fraud as money from Carolina Comprehensive Health Network was being paid to individuals within SMH. Upon information and belief by September of 2015 approximately $150,000 had been paid to SMH by Carolina Comprehensive Health Network for the year-to-date.

24. That the staff at the Mount Airy location of Carolina Comprehensive Health Network were instructed by Penny Pope, FNP, to bill all incoming patients for Level 4 office visits, Code 99214. Penny Pope instructed Mount Airy staff, witnessed by the Relators, that if a patient presented with insufficient symptoms to merit a coding of 99214 they were to add symptoms of fatigue/malaise (780.79) and headache (784.0) as diagnosis codes. These diagnosis codes were used regardless of whether the patient voiced complaints of fatigue or a headache. Penny Pope told staff, including the Relators, that "everyone is tired and has occasional headaches."

25. That all pain patients seen at the Mount Airy location of Carolina Comprehensive Health Network were required to undergo a nerve conduction study regardless of their diagnosis. Penny Pope, FNP, informed patients that the nerve conduction study was required as part of their pain management program.

26. That at the end of June 2015 all locations of Carolina Comprehensive Health Network began requiring a nerve/pain fiber test be conducted on all patients of the pain

9

management program. A large majority of patients billed for the nerve conduction study were falsely diagnosed by staff with dizziness/giddiness (780.4) to merit the billing.

27. That during June of 2015 all pain management patients were required to visit the Mount Airy clinic for pill counts and mass spectrometry urine drug screens. The staff at the Mount Airy location were instructed to have these tests completed on all pain patients prior to June 30, 2015, in an effort to increase the accounts receivable for that month.

28. That as a matter of practice, Penny Pope, FNP, at the Mount Airy location, directed staff to provide all pain management patients with 60mg of Toradol IM prior to being seen by Ms. Poper during their visit. The staff at the Mount Airy location were instructed to provide this medication unless the patient refused and regardless of the patient's current pain level.

29. That pain management patients at the Mount Airy location were encouraged by Penny Pope, FNP, to received joint injections of Depo-Medrol/lidocaine/Marcaine. Once a patient agreed to the aforementioned injections a flow-chart was placed in that patient's chart to remind Ms. Pope to give the injections every three months without an assessment of need being conducted.

30. That in July of 2015, Scott Swoope, son of Claudia Swoope, District Manager for Carolina Comprehensive Health Network, began administering the nerve conduction studies at all Carolina Comprehensive Health Network locations. Relators were at the Mount Airy location when Scott Swoope arrived and reported that Mr. Swoope did not have the proper equipment with which to conduct the nerve conduction studies. Scott Swoope proceeded to administer "nerve conduction studies" on patients without having or using the proper electrode patches or electrode tools necessary. Despite the invalid nerve conduction studies conducted, all patients

were billed for the completion of a nerve conduction study. Upon information and belief, Scott Swoope did not have any training or education which qualified him to conduct nerve conduction studies.

31. That all pain management patients diagnosed with anxiety at the Mount Airy location were required to provide urines samples for the conduction of mass spectrometry testing, code G0431. Employees and staff at the Mount Airy location were instructed to run Mass Spectrometry testing on all pain patients every month. All samples collected at the Mount Airy location were sent to the Statesville location to be processed at the in-house lab.

   a. Medicare considers performance of a qualitative drug screen medically reasonable and necessary when; managing a patient under treatment for substance abuse and there is suspicion of continued substance abuse, managing a patient with chronic pain and there is a significant pre-test probability of non-adherence to the prescribed drug regimen as documented in the patient's medical record, or when the managing patients with chronic pain in a designated pain management clinic where the select population has a significant pretest probability of drug interactions and side effects.

   b. Medicare does not consider qualitative drug screens medically reasonable or necessary for; simultaneous blood and urine specimen screening, employment or recreational purposes, or routine screening performed as part of a physician's protocol for treatment, unless it falls within the parameters defined by Medicare.

32. That all patients triaged at the Mount Airy location of Carolina Comprehensive Health Network had a pulse oximeter placed on their finder during triage regardless of treating

11

symptoms or conditions. The staff at Mount Airy was instructed by Penny Pope, FNP, to bill for the pulse oximeter testing on any patient with a prior diagnosis related to pulmonary issues.

33. That the staff and employees at the Mount Airy location were instructed to complete a pre and post peak flow and albuterol nebulizer treatment on all patients presenting with a cough before they were evaluated by Penny Pope. Relator, Melanie Childress was sent to patient's exam rooms on multiple occasions to conduct a pre and post peak flow and albuterol nebulizer treatments. On one occasion, Ms. Childress questioned the patient concerning their symptoms, the patient denied having a cough and stated they were unaware they were sick, but were told by Penny Pope, FNP, that their lungs sounded "horrible". Ms. Childress then proceeded to listen to the patient's lungs and found the breath sounds to be clear.

34. That the staff at the Mount Airy location were instructed by Penny Pope, FNP, to draw a full set of labs on all new patients prior to her going into the exam room to see the patient. A full set of labs were run no matter the age of the patient, symptoms with which the patient presented, or prior diagnosis. A full set of labs included; a urinalysis, CBC, Hgb-A1C, CMP, Cholesterol, HDL, LDL, Triglycerides, TSH, Testosterone, and PSA if it was a male over the age of 50.

35. That all lab specimens taken at the Mount Airy location were sent to the Statesville Carolina Comprehensive Health Network location to be processed at the in-house laboratory. The in-house laboratory at the Statesville location was run by Robert Schoonhoven, father-in-law to the owner of Carolina Comprehensive Health Network, Michael A. Smith. A majority of lab results received by the Mount Airy location indicated that patients had a high creatinine or ALT level. Subsequently, Penny Pope, FNP, would order either a renal or liver

12

Case 1:16-cv-00234-WO-LPA   Document 1   Filed 03/25/16   Page 12 of 20

ultrasound respectively. Carolina Comprehensive Health Network owned ultrasound equipment with which it conducted the ultrasound procedures.

36. That Penny Pope, FNP, was conducting cortisone injections despite not being approved or trained to do so by her supervising physician, Dr. Majure. Upon Dr. Majure becoming aware of Ms. Pope's actions he ordered that she immediately stop conducting said injections. Subsequent to Dr. Majure's instruction, Ms. Pope continued to conduct injections, but merely injected joint patients with lidocaine, the numbing agent used in cortisone injections. Patients that had received such injections began complaining to the Mount Airy staff that they were experiencing pain several hours after the injection had been conducted once the lidocaine wore off.

37. That Mount Airy was billing all patients with a history of smoking for tobacco cessation services, code 99406. Penny Pope, FNP, instructed all Mount Airy staff to document and circle the necessary charges that allowed for billing code 99406 prior to a medical provider ever entering the patient's exam room. Code 99406 indicates that greater than three minutes and up to ten minutes were spent counseling the patient regarding their use of tobacco.

38. That Brian Gaskill, CEO of Carolina Comprehensive Health Network NETWORK was provided pain prescriptions by Penny Pope, FNP, for Tylenol 3, Tylenol 4, and Adderall under the name Brian Gaskill as well as under the name John Gaskill.

39. That the Relators have reason to believe that the above-referenced fraud was being conducted throughout all nine Carolina Comprehensive Health Network locations as many of the fraudulent practices were initiated by the management of Carolina Comprehensive Health Network and communicated to all locations via company-wide memos. These memos directed all locations to conduct medically unnecessary procedures, lab work and mass spectrometry.

13

Case 1:16-cv-00234-WO-LPA   Document 1   Filed 03/25/16   Page 13 of 20

40. That Relators Cynthia Smith and Melanie Childress became aware that Carolina Comprehensive Health Network failed to report any income for either employee for the 2015 year despite the company withholding money from each of their paychecks for social security, federal income tax and North Carolina Income taxes. Both Relators were able to confirm that no income had been reported for 2015 through the Social Security Administration.

## CAUSES OF ACTION

### I. VIOLATION OF THE FALSE CLAIMS ACT (31 U.S.C. §3729(A)(1)(A))

41. That this is a civil action by Realtors Cynthia Smith and Melanie Childress acting on behalf of and in the name of the United States of American, against Carolina Comprehensive Health Network.

42. That the Relators reaffirm and reallege the foregoing paragraphs as if set for the fully verbatim as related to this specific claim.

43. That from February 1, 2014, until the sale of said entity in late February of 2016, Carolina Comprehensive Health Network participated in, filed claims with, sought reimbursement from, and actually received funds from Federal Payer Programs, specifically Medicare and Medicaid, for providing services to beneficiaries.

44. That from February 1, 2014, until the sale of Carolina Comprehensive Health Network in late February of 2016, Carolina Comprehensive Health Network participated in, filed claims with, sought reimbursement from, and actually received funds from Federal Payer Programs, specifically Medicare and Medicaid, for providing services to beneficiaries, which included medically unnecessary testing and services, up coding of services, and coding for services never rendered.

14

45. That as a result of providing the aforementioned services to Medicare and Medicaid insureds that were in violation of the Federal Payer Conditions of Participation, Carolina Comprehensive Health Network submitted, caused to be submitted, or assisted or supervised the submission of fraudulent claims to the Federal Payer Programs for payment in violation of the FCA.

46. That as referenced above, the process for requesting payment for services rendered to Federal Payer Program beneficiaries required the submission of individual claim forms by Carolina Comprehensive Health Network for each patient which represented that the services provided to the Medicare and Medicaid beneficiaries were provided in accordance with existing applicable law and regulatory authority, when in actuality services were not being provided in accordance with applicable law.

47. That in furtherance of its plan and scheme, Carolina Comprehensive Health Network presented false claims for and received illegal payments based upon those claims presented to the United States' government in violation of 31 U.S.C. §3729(a)(1)(A).

48. The United States has been damaged as a result of the violation of the False Claims Act by Carolina Comprehensive Health Network and the government is entitled to be reimbursed for monies obtained by Carolina Comprehensive Health Network and for the amount of money by which it has overcompensated Carolina Comprehensive Health Network, for fraudulent claims it presented or caused to be presented for payment or approval to the United States of America.

49. That the United States of America is entitled to treble damages based upon the amount of damages sustained by the United States of America as a result of violations of 31 U.S.C. §3729(a)(1) by Carolina Comprehensive Health Network.

50. That the United States of America is entitled to a civil penalty between $5,000.00 and $10,000 as required by 31 U.S.C. §3729(a)(1) for each fraudulent claim of Carolina Comprehensive Health Network.

51. That Relators are also entitled to reasonable attorney's fees and costs, pursuant to 31 U.S.C. §3730(d) and a percentage of the government's recovery.

## II. VIOLATION OF FALSE CLAIMS ACT (31 U.S.C. 3729(a)(1)(B))

52. That Relators reaffirm and reallege the heretofore pled paragraphs as if set forth fully verbatim as related to this specific claim.

53. That Relators allege that in performing the acts heretofore set forth, Carolina Comprehensive Health Network knowing made, used, or caused to be made or used false records or statements to get a false or fraudulent claim paid or approved by the government to the damage of the United States of America in violation of 31 U.S.C. §3729(a)(1)(B). As a result Carolina Comprehensive Health Network has knowingly presented or caused to be presented to an officer or employee of the United States of America false or fraudulent claims for payment or approval in violation of 31 U.S.C. §3729(a)(1).

54. That the United States of America has been damaged as a result of the violation of the False Claims Act by Carolina Comprehensive Health Network and as such is entitled to be reimbursed for the monies obtained by it for fraudulent claims it presented or caused to be presented for payment or approval.

55. That the United States of America is entitled to treble damages based upon the amount of damages sustained by the United States of America as a result of violations of law by Carolina Comprehensive Health Network.

56. That the United States of America is entitled to a civil penalty between $5,000.00 and $10,000 as required by 31 U.S.C. §3729(a)(1) for each fraudulent claim of Carolina Comprehensive Health Network.

57. That Relators are also entitled to reasonable attorney's fees and costs, pursuant to 31 U.S.C. §3730(d) and a percentage of the government's recovery.

### III. VIOLATION OF FALSE CLAIMS ACT (31 U.S.C. 3729(a)(1)(C))

58. That Relators reaffirm and reallege the heretofore pled paragraphs as if set forth fully verbatim as related to this specific action.

59. That Relators allege that in performing the acts hereinbefore set forth, Carolina Comprehensive Health Network knowing made, used, or caused to be made or used false records or statements to get a false or fraudulent claim paid or approved by the government to the damage of the United States of America in violation of 31 U.S.C. §3729(a)(1). As a result Carolina Comprehensive Health Network has knowingly presented or caused to be presented to an officer or employee of the United States of America false or fraudulent claims for payment or approval in violation of 31 U.S.C. §3729(a)(1).

60. That the United States of America has been damaged as a result of the violation of the False Claims Act by Carolina Comprehensive Health Network and as such is entitled to be reimbursed for the monies obtained by it for fraudulent claims it presented or caused to be presented for payment or approval.

61. That the United States of America is entitled to treble damages based upon the amount of damages sustained by the United States of America as a result of violations of law by Carolina Comprehensive Health Network.

62. That the United States of America is entitled to a civil penalty between $5,000.00 and $10,000 as required by 31 U.S.C. §3729(a)(1) for each fraudulent claim of Carolina Comprehensive Health Network.

63. That Relators are also entitled to reasonable attorney's fees and costs, pursuant to 31 U.S.C. §3730(d) and a percentage of the government's recovery.

### IV. VIOLATION OF THE NORTH CAROLINA FALSE CLAIMS ACT

64. The Relators reaffirm and reallege the heretofore pled paragraphs as if set forth fully verbatim as related to this specific action.

65. That Prior to filing this action, Relators served the Attorney General of North Carolina with written disclosure of substantially all material evidence and information then in Relators' possession.

66. That Defendants' acts and practices, as described more fully above, have violated the North Carolina False Claims Act, N.C. Gen. Stat. §§ 1-605, *et seq.*

67. That Defendants have knowingly presented and/or caused to be presented to the State of North Carolina false or fraudulent claims for payment or approval in violation of N.C. Gen. Stat. § 1-607(a)(1).

68. That Defendants have knowingly made, used and/or caused to be made or used false records or statements material to false or fraudulent claims in violation of N.C. Gen. Stat. § 1-607(a)(2).

69. That Defendants have conspired to violate subdivisions (1) and (2) of N.C. Gen. Stat. § 1-607(a) in violation of N.C. Gen. Stat. § 1-607(a)(3).

18

Case 1:16-cv-00234-WO-LPA   Document 1   Filed 03/25/16   Page 18 of 20

70. The State of North Carolina, unaware of the falsity of the records, statements and/or claims made or caused to be made by Defendants, paid claims that would not have been paid but for Defendants' unlawful practices as detailed above.

71. By reason of Defendants' acts and practices, the State of North Carolina has been damaged, and continues to be damaged, in a substantial amount.

**WHEREFORE**, Relators, on behalf of themselves and the United States Government, pursuant to 31 U.S.C. 3730(c)(5) and (d) prays as follows:

1. That this Court enter judgment against Carolina Comprehensive Health Network I an amount equal to three times the amount of damages the United States Government has sustained because of Carolina Comprehensive Health Network's actions, plus a civil penalty of between $5,500 and $10,000 for each action in violation of 31 U.S.C. 3729 and as adjusted upward by law, and the costs and expenses of this action, with interest, including the costs to the United States Government for its expenses related to this action;

2. That if this action proceeds or the United States Government proceeds with any alternative remedy, that Relators be awarded an amount the Court decides is reasonable for collecting the civil penalty and damages.

3. That the United States Government and Relators receive all relief from Carolina Comprehensive Health Network, bot at law and at equity, to which they may reasonable appear entitled, including all litigation costs and reasonable attorney's fees incurred by the federal government and the Relators as provided pursuant to 31 U.S.C. 3730(h) and other applicable law;

4. That the Court compel a complete accounting from Carolina Comprehensive Health Network;

5. Such further relief as the Court deems just and proper.

## JURY DEMAND

**RELATORS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

**MILLER LAW FIRM, PLLC**
**ATTORNEYS AT LAW**

*/s/ W. Stacy Miller, II*

W. Stacy Miller, II
Attorney for Plaintiff
N.C. State Bar #21198
Post Office Box 1769
Raleigh, NC 276012
Telephone: (919) 348-4361
Fax: (919) 729-2953
Email: stacy@miller-lawfirm.com

Dated: March 23, 2016